UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA

   - against -

LINO EVANGELISTA a/k/a CHICANO HIRALDO
a/k/a PEDRO DE JESUS-RIVERA,

                     Defendant.

------------------------------------------X

08 Cr. 172-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

        On April 25, 2008, Lino Evangelista ("Evangelista" or "Defendant") appeared before this Court and pled guilty to one count of illegal re-entry following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  For the reasons set forth below, Evangelista will be sentenced to 37 months imprisonment and 3 years supervised release.  Evangelista also will be required to pay a special assessment of $100.

**Prior Proceedings**

        Indictment 08 Cr. 172 (RWS) was filed in the Southern District of New York on February 29, 2008.  Count I charges that on April 10, 2003, up to and including November 9, 2007, in the Southern District of New York and elsewhere, Evangelista, a/k/a

1

"Pedro de Jesus-Rivera," a/k/a "Chicano Hiraldo," being an alien, unlawfully did enter and was found in the United States after being deported and removed from the United States on August 1, 2001, subsequent to a conviction for an aggravated felony on November 28, 1995, in the New York Supreme Court, in Bronx, NY, for unlawful sale of a criminal control substance in the third degree, without having obtained the express consent of the Attorney General of the United States to his reapplying for admission.

On April 25, 2008, Evangelista appeared before this Court and pleaded guilty to Count I.

The Government has presented its position on the application of the U.S. Sentencing Guidelines in a Pimintel letter, as follows:

- the applicable guideline is §2L1.2 which designates a base offense level of eight;

- pursuant to §2L1.2(b)(1)(B), since the Defendant was previously deported subsequent to a conviction for a felony drug trafficking offense in which the sentence imposed was 13 months or less, the offense level is increased by 12 levels;

- pursuant to §3E1.1(a) and (b), since the defendant pled guilty in a timely manner, a three-level reduction for acceptance of responsibility is applicable;

- the Defendant's Criminal History Category is V;

- based on the aforementioned calculations, the total offense level is 17, the guideline range for imprisonment is 46 to 57 months, and the fine range is $5,000 to $50,000.

Sentencing is scheduled for December 1, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in

addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for-
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that

sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Evangelista's personal and family history.

**The Offense Conduct**

The following description draws on the PSR.  The specific facts of the underlying conduct are adopted as set forth in that report.

On November 28, 1995, Lino Evangelista was convicted,

in Bronx County Supreme Court in Bronx, New York, of Attempted Criminal Sale of a Controlled Substance in the Third Degree, an aggravated felony.  He was sentenced to one year imprisonment and six months driver's license suspension.

On August 1, 2001, Evangelista was lawfully removed from the United States by immigration officials to the Dominican Republic.

On April 10, 2003, Evangelista illegally re-entered the United States by crossing the border between Texas and Mexico. After crossing the border, Evangelista was apprehended by immigration officials.  He gave them the false name "Pedro de Jesus-Rivera."

Immigration authorities did not immediately recognize that "de Jesus-Rivera" was in fact Evangelista, and he was released on bond pending a deportation hearing, and on November 9, 2007, he was arrested in Bronx, New York, and charged with criminal trespass.

At the time of his arrest, Evangelista identified himself to the NYPD officers as "Chicano Hiraldo."  Fingerprint comparisons subsequently confirmed that Evangelista was the

person who had used the aliases "Pedro de Jesus-Rivera" and "Chicano Hiraldo."

On February 14, 2008, Evangelista was taken into federal custody.

**The Relevant Statutory Provisions**

The maximum statutory sentence for violation of 8 U.S.C. § 1326(b)(2) is 20 years imprisonment. Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Evangelista is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a

condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The May 1, 2008 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for a violation of 8 U.S.C. § 1326(a) and (b)(2) is found in §2L1.2(a), and designates a base offense level of eight.

Since Evangelista was previously deported subsequent to a conviction for a felony drug trafficking offense which resulted in a sentence of more than 13 months, pursuant to §2L1.2(b)(1)(A), a 16-level increase is applicable.

Evangelista has shown recognition of responsibility for the offense.  Because of his timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to §3E1.1(a) and (b) the offense level is reduced by three.

Accordingly, the applicable offense level is 21.

On December 13, 1994, Evangelista was arrested for Attempted Criminal Sale of a Controlled Substance in the 3rd Degree.  On December 1, 1995, he was sentenced to one year imprisonment.  Pursuant to § 4A1.1(b), this conviction warrants two criminal history points.

On October 26, 1995, Evangelista was arrested for Attempted Criminal Sale of a Controlled Substance in the 3rd Degree.  On November 28, 1995, he was sentenced to one year imprisonment and six months driver's license suspension.  Pursuant to § 4A1.1(b), this conviction warrants two criminal history points.

On April 2, 1997, Evangelista was arrested for Criminal Possession of a Controlled Substance in the 2nd Degree.  On October 22, 1998, he was sentenced to six years to life imprisonment.  On August 8, 2001, Evangelista was released on parole.  On December 26, 2007, his parole was revoked.  Pursuant to § 4A1.1(a), this conviction warrants three criminal history points.

On November 9, 2007, Evangelista was arrested for

Criminal Trespass in the 2nd Degree. On December 19, 2007, he was sentenced to 45 days imprisonment. Pursuant to § 4A1.1(c), this conviction warrants one criminal history point.

At the time the instant offense was committed, Evangelista was on parole. Pursuant to § 4A1.1(d), two points are added.

A total of ten criminal history points establishes a Criminal History Category of V, pursuant to the table at Chapter 5, Part A of the Sentencing Guidelines.

Based on a total offense level of 21 and a Criminal History Category of V, the Guidelines range for imprisonment is 70 to 87 months.

The Guidelines range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, Evangelista is not eligible for probation, pursuant to §5B1.1, application note 2.

The fine range for the instant offense is from $7,500 to $75,000, pursuant to §5E1.2(c)(3). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, and in particular 18 U.S.C. § 3553(a)(1), (2), (5) and (6), imposition of a non-Guidelines sentence is warranted.

**The Fast Track Disparity**

11

Section 3553(a)(6) instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A number of courts, including courts in this district, have recognized the unwarranted sentencing disparities that result from so-called "fast track" programs for dealing with illegal reentry cases. See, e.g., United States v. Miranda-Garcia, No. 6:05-Cr-202-Orl-31DAB, 2006 WL 1208013, at *2 (M.D. Fla. May 4, 2006); United States v. Ramirez-Ramirez, 365 F. Supp. 2d 728, 731-32 (E.D. Va. 2005); United States v. Galvez-Barrios, 335 F. Supp. 2d 958, 963 (E.D. Wis. 2005); United States v. Bonnet-Grullon, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), aff'd, 212 F.3d 692 (2d Cir. 2000). This Court previously has imposed non-Guidelines sentences in recognition of the fast-track disparity. See, e.g., United States v. Santos-Nuez, 05 Cr. 1232 (RWS), 2006 WL 1409106 (S.D.N.Y. May 22, 2006); United States v. Austin, No. 05 Cr. 744 (RWS), 2006 WL 305462 (S.D.N.Y. Feb. 6, 2006); United States v. Santos, 406 F. Supp. 2d 320 (S.D.N.Y. 2005). See also United States v. Seval, 07-1204-cr, 2008 WL 4376826 (2d Cir. Sept. 25, 2008) (remanding for resentencing in light of district court's erroneous view that it did not have discretion to depart from Guidelines based on fast-track disparity).

In response to the increasing number of illegal reentry arrests in certain geographical areas, a number of judicial districts began utilizing fast-track programs to manage charges brought under section 1326 more efficiently. The programs work as follows:

> Through charge bargaining or stipulated departures, these programs allow a § 1326 offender who agrees to a quick guilty plea and uncontested removal to receive a reduced sentence . . . . In the Southern District of California, for example, defendants subject to 20 year statutory maximums and guideline ranges of 70-87 months were allowed to plead guilty to an offense carrying a two year statutory maximum penalty. See United States v. Banuelos-Rodriguez, 215 F.3d 969 (9th Cir. 2000). In other border districts, defendants received downward departures to induce fast pleas. See [Erin T. Middleton, Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border Are Undermining the Sentencing Guidelines and Violating Equal Protection, 2004 Utah L. Rev. 827] at 829-30. Recently, in the PROTECT Act, Congress made fast-track programs official, see Middleton at 838-40, and the Commission then enacted a guideline, § 5K3.1, providing for a 4 level departure on the government's motion pursuant to an early disposition program.

Galvez-Barrios, 355 F. Supp. 2d at 963. In other words, in districts utilizing fast-track programs, offenders agree to a quick removal, saving the Government resources, and in return they receive reduced sentences.

While fast-track programs may create an efficient solution to an explosion of illegal reentry cases in border districts, they nevertheless result in the type of sentencing

disparity cautioned against in section 3553(a)(6). As the court in Galvez-Barrios explained: "Because they operate only in certain districts (typically in southwestern states), an illegal alien stopped in California or Arizona will receive a lighter sentence than an alien convicted of the same offense and with the same record who is found in Wisconsin." 355 F. Supp. 2d at 963. As the Honorable Lewis A. Kaplan noted, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." Bonnet-Grullon, 53 F. Supp. 2d at 435. Because the disparity created is of the type envisioned by section 3553(a)(6), under Crosby it is appropriate for the Court to exercise discretion to minimize the sentencing disparity that fast-track programs create.

Section 3553(a)(5) instructs courts to consider policy statements issued by the Sentencing Commission in determining whether a non-guideline sentence should be imposed. The Sentencing Commission itself has expressed serious concern about the unwarranted disparities that result from fast-track programs. As the Commission explained:

> The statutory requirement that the Attorney General approve all early disposition programs hopefully will bring about greater uniformity and transparency among those districts that implement authorized programs. Defendants sentenced in districts without authorized early disposition

programs, however, can be expected to receive
longer sentences than similarly-situated defendants
in districts with such programs. This type of
geographical disparity appears to be at odds with
the overall Sentencing Reform Act goal of reducing
unwarranted disparity among similarly-situated
offenders.

U.S. Sentencing Comm'n, Report to Congress: Downward Departures from the Federal Sentencing Guidelines 66-67 (2003). This acknowledgment by the Sentencing Commission that the existence of fast-track programs creates unwarranted disparities in sentencing militates in favor of imposing a non-Guidelines sentence.

### Double-Counting of Criminal History

Evangelista's advisory Guideline range of 46 to 57 months incarceration is also unreasonable because it double counts his criminal history, using his prior convictions not only to enhance his criminal history category but also to increase his offense level threefold. As one court considering this issue has noted, "although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis." Galvez-Barrios, 355 F. Supp. 2d at 958. The Honorable Jed S. Rakoff cited this arbitrary aspect of the Guidelines in justifying a below-Guidelines sentence for a defendant charged with conduct similar to that of Evangelista. See United States

15

v. Ramon Ramirez, 04 Cr. 1021 (JSR). This Court previously has imposed non-Guidelines sentences to discount the unreasonably harsh effects of double-counting in illegal re-entry cases. See Austin, 2006 WL 305462 at *8-*9; Santos, 406 F. Supp. 2d at 327-328.

In this case, double-counting is inappropriate. Nowhere but in the illegal re-entry Guidelines is a defendant's offense level increased threefold based solely on a prior conviction. Here, the Defendant's conviction for Criminal Sale of a Controlled Substance in the Second Degree results in an increase of sixteen offense levels. In any criminal history category, such an adjustment increases the sentencing range by approximately five years. In the case of Evangelista, that conviction also accounts for three of his ten criminal history points, resulting in a criminal history category of V. The result of this double-counting produces a Guidelines range that is unreasonable, given the non-violent nature of the instant offense.

**The Sentence**

In determining the non-Guidelines sentence to be imposed in this case, it is appropriate to consider how other

courts have approached the fast-track disparity and the double-counting issue. In this District, on October 28, 2005, the Honorable Kimba M. Wood imposed a non-Guidelines sentence based upon the unwarranted sentencing disparity in illegal reentry cases. See United States v. Vernal Mark Deans, 03 Cr. 387 (KMW). Judge Wood found that most fast-track illegal reentry jurisdictions on average reduce a sentence by four offense levels, and accordingly rejected the Guidelines range of seventy-seven to ninety-six months and imposed a sentence of fifty-one months. This Court previously has utilized the equivalent of a four-level reduction in the offense level in determining the length of non-Guidelines sentences. Santos-Nuez, 2006 WL 1409106 at *6; Santos, 406 F. Supp. 2d at 329; Linval, 2005 WL 3215155, at *7.

The court in Galvez-Barrios applied a three-level departure to offset properly the double-counting of criminal history in illegal re-entry cases. 355 F.Supp.2d at 964. This Court has applied the equivalent of a three-level adjustment in a number of recent cases involving double-counting. See Santos-Nuez, 2006 WL 1409106 at *7; Austin, 2006 WL 305462, at *9; Santos, 406 F. Supp. 2d at 329.

Accordingly, after accounting for the effects of the

17

fast-track disparity and double-counting, Evangelista is more appropriately sentenced at the equivalent of an offense level of 14. Under the Guidelines, an offense level of 14 and a Criminal History Category of V result in a range of 33 to 41 months.

In imposing the sentence, the Court considers the Defendant's criminal history, his motive for illegal re-entry, and the fact that he will face deportation proceedings following his release from custody. Evangelista is hereby sentenced to thirty-seven of imprisonment, followed by a three-year term of supervised release.

Evangelista is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence his term of supervised release. It is recommended that Evangelista be supervised by the district of his residence.

As mandatory conditions of his supervised release, Evangelista shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Evangelista will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The Defendant will be required to contribute to the costs of services rendered (co-payment) in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

(2) The Defendant shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include urine testing at the direction and discretion of the Probation Officer.

(3) The Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

The fine in this case is waived. However, a special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

It is so ordered.

**New York, NY**
**November 25, 2008**

ROBERT W. SWEET
U.S.D.J.